# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH BLAKENEY | : | No. 19-632 |

## MEMORANDUM

PRATTER, J.                                                                                                         JUNE 26, 2020

After Kenneth Blakeney fled from police and abandoned his Chevrolet Impala in the middle of an intersection, Officers Clayton Baker and David Escamilla recovered a firearm from the back of the vehicle. The officers had the Impala towed and stored by a third-party rotational tow company. The tow company scrapped the vehicle approximately two months later because no one paid the storage fees or claimed the vehicle.

Mr. Blakeney moves to dismiss the indictment for denial of due process in the form of the Government's failure to preserve potentially useful evidence. For the reasons that follow, the Court denies the motion to dismiss.

## BACKGROUND[1]

On March 19, 2019, Officers Baker and Escamilla pulled over Mr. Blakeney's silver Chevrolet Impala after Officer Baker observed what he believed to be an inoperable brake light. While Officer Baker was speaking with Mr. Blakeney, Officer Escamilla circled to the passenger side and used a flashlight to look into the Impala's windows, checking for weapons for officer

---

[1] The Court's comprehensive findings of fact following the presentation of evidence at the evidentiary hearing on Mr. Blakeney's earlier motion to suppress can be found in the Court's March 10, 2020 Memorandum (Doc. No. 34).

1

safety and any illegal contraband in plain view. Upon observing a silver and black firearm under the passenger seat, Officer Escamilla signaled to Officer Baker that there was a gun in the car. Officer Baker asked Mr. Blakeney to produce a permit for the firearm, but Mr. Blakeney produced only his driver's license. Officer Baker asked Mr. Blakeney again for his firearm permit, at which point Mr. Blakeney put the car in drive and took off.

The officers radioed regarding the situation and followed Mr. Blakeney in their police van. After Officer Baker turned northbound off of Erie Avenue onto 17th Street, he saw Mr. Blakeney fleeing on foot and the Impala stopped in the middle of the intersection of 17th Street and Pulaski Avenue. The driver's side door was open and the engine still running. Additional officers arrived on the scene and at least one officer remained with the Impala while the others surveilled the area for Mr. Blakeney. After Mr. Blakeney could not be located, Officer Baker—who was still holding Mr. Blakeney's driver license—returned to the Impala and recovered the gun from the back of the vehicle.

Seeking further instruction, Officers Baker and Escamilla called the Northwest Detective Division and were told to have the vehicle towed, using a rotational tow company, and to turn in the firearm and Mr. Blakeney's driver's license. The officers called rotational tow company Joseph's Towing, which came and towed the Impala after the officers had completed their search of the vehicle.

Joseph's Towing stored the Impala for approximately two months, but no one paid the storage fees or claimed the vehicle. At that point, Joseph's Towing made the decision to scrap the car to free up space.

## LEGAL STANDARD

To succeed on a motion to dismiss on the grounds that the Government failed to preserve evidence under the Supreme Court's decisions in *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), a defendant must demonstrate that the Government "(1) acted in bad faith when it destroyed the evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable." *United States v. Jackman*, 72 F. App'x 862, 866 (3d Cir. 2003).

It is the defendant's burden "to show the prosecution's bad faith in ordering or permitting its destruction." *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993). "[T]he 'presence or absence of good or bad faith by the government will dispositive." *Jackman*, 72 F. App'x at 866 (quoting *United States v. Femia*, 9 F.3d 990, 994 (1st Cir. 1993)). Bad faith "turns on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* (quoting *Youngblood*, 488 U.S. at 56 n.1). Although the Government's failure to follow standard procedure may permit an inference of bad faith, "it does not syllogistically imply the presence of bad faith as a matter of deductive logic." *Deaner*, 1 F.3d at 200.

## DISCUSSION

Mr. Blakeney claims that Officers Baker and Escamilla acted in bad faith when they towed his vehicle in contradiction of police directives related to the preservation of property. Specifically, Mr. Blakeney relies on Note 4 of Philadelphia Police Directive 12.5-5, which instructs:

> If the vehicles can be moved to a safe location, under their own power, a tow is not needed. Non- rotational tow operators' [sic] cannot move the vehicles to the side of the road, nor can officers allow these tow operators' [sic] to move these vehicles for the sake of convenience or expediency. Remember, once the rotational tow is cancelled, should the owner/operator allow a non-rotational tow company to take the vehicle, they are no longer protected from outrageous towing and storage fees.

Mot. to Dismiss Ex. B. Mr. Blakeney claims that the officers, per this directive, should have moved the Impala to the side of the road because it was still running with the keys in the ignition and could have been moved under its own power. He argues that the officers' failure to follow this police directive, among others, is evidence of their bad faith.

In additional support of his bad faith argument, Mr. Blakeley claims that it is not credible to conclude from the evidence that an unidentified detective instructed the officers to have the Impala towed by a rotational tow. He suggests it is more likely that the officers were incensed due to their inability to locate the suspect, so they decided to exact some punishment in the form of having the car removed by a rotational tow, which would result in Mr. Blakeney having to pay excessive storage fees.

Mr. Blakeney also argues that the Impala possessed apparent exculpatory value. First, he asserts that if the Impala had not been towed and subsequently destroyed, its brake lights and taillights could have been tested to determine whether the officers' reason for pulling Mr. Blakeney over was credible. Second, Mr. Blakeney claims that the Impala's windows were heavily tinted and could have been tested to determine whether Officer Escamilla could have seen through the windows using a flashlight at night. Mr. Blakeney asserts that the results of both of these tests could have impacted the Court's ruling on his motion to suppress, which, if granted, would have resulted in dismissal of the indictment.

First, the Court notes that the operability of the Impala's lights would have been immaterial to the motion to suppress. As previously explained:

> Even if the Impala's lights were fully functional, an officer's belief that a traffic law was violated need not be factually accurate; rather, the officer "need only produce facts establishing that she reasonably believed that a violation had taken place." *Delfin-Colina*, 464 F.3d at 398. Here, Officer Baker testified that he observed conditions that led him to believe that Mr. Blakeney's Impala was in violation of the Pennsylvania Motor Vehicle Code. Although Officer Baker could

4

not recall on the stand exactly what led him to conclude that the Impala was in violation of the Vehicle Code, he testified that he thought either one of the Impala's rear lights was inoperable or Mr. Blakeney had failed to use his turn signal .... Upon consideration of all the documentary evidence and testimony presented, the Court finds Officer Baker's testimony credible and accepts that he believed Mr. Blakeney's Impala was in violation of the Pennsylvania Motor Vehicle Code when he made the decision to flash the police van's lights and pull over Mr. Blakeney. Therefore, the Government has met its modest burden to prove that the officers had reasonable suspicion to stop Mr. Blakeney and the ensuing seizure was reasonable.

Mar. 10, 2020 Mem. 5–6 (Doc. No. 34).

Second, and dispositively, the Court finds that Mr. Blakeney has not met his burden to show bad faith on the part of the Government. Even if the officers failed to follow standard procedure as set forth in Philadelphia Police Directive 12.5-5 and similar directives, there is no evidence from any of the testimony, exhibits, or arguments presented that the officers knew of the Impala's exculpatory value at the time.[2] At most, Mr. Blakeney may have demonstrated some form of negligence on the part of the officers, but the officers' failure to follow a towing protocol under the facts presented here does not imply their bad faith. Nor does any of the evidence or applicable case law lend itself to finding by any kind of logic that the officers used a rotational tow as a way to "get back at" or otherwise punish Mr. Blakeney. To conclude that the officers ordered a rotational tow in a conscious, bad faith effort to harm Mr. Blakeney or his defense would be wholly speculative in nature.

Therefore, Court concludes that under the documentary evidence, testimony presented, and arguments made, the required showing of the Government's bad faith is an insurmountable obstacle that Mr. Blakeney cannot overcome.

---

[2] Assuming, of course, that the Impala even possessed exculpatory value, which the Court does not endorse.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Blakeney's motion to dismiss. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **KENNETH BLAKENEY** | : | **No. 19-632** |

## ORDER

**AND NOW**, this 26th day of June, 2020, upon consideration of Mr. Blakeney's Motion to Dismiss (Doc. No. 25), the Government's response thereto (Doc. No. 29), and following a hearing held on March 11, 2020, it is **ORDERED** that Mr. Blakeney's Motion to Dismiss (Doc. No. 25) is **DENIED** as outlined in the Court's accompanying Memorandum.

BY THE COURT:

GENE E.K. PRATTER
**UNITED STATES DISTRICT JUDGE**