IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH BLAKENEY | : | No. 19-632 |

**MEMORANDUM**

PRATTER, J.                                                                        FEBRUARY 4, 2021

**BACKGROUND**

Officers Baker and Escamilla pulled over Defendant Kenneth Blakeney because his Chevy Impala had a broken brake light.[1] While Officer Baker approached the driver's side of the vehicle to speak with Mr. Blakeney, Officer Escamilla circled to the passenger side and shone a flashlight into the car. Officer Escamilla spotted a silver and black firearm under the passenger seat, and signaled to Officer Baker. Officer Baker asked about the firearm, and Mr. Blakeney said that he had a permit for it. Officer Baker asked for the permit, but Mr. Blakeney produced only his driver's license. After examining Mr. Blakeney's driver's license, Officer Baker again asked for his firearm permit. Officer Escamilla opened the car door to retrieve the firearm. Mr. Blakeney put the car in drive and took off. The car door hit Officer Escamilla as Mr. Blakeney drove away. Although Officer Escamilla was not seriously injured, the impact caused the retrieved gun to fall out of his hand and back into the car.

Mr. Blakeney sped away for several blocks with the officers in close pursuit. Mr. Blakeney eventually abandoned his car in the middle of an intersection and continued to flee on foot, leaving the car door open and the engine running. More officers arrived on the scene and tried to find Mr. Blakeney, but to no avail. However, Officer Baker still had Mr. Blakeney's driver's license.

---

[1] The following facts are drawn from prior submissions to the Court in this case.

1

Police officers also recovered a .45 caliber handgun loaded with seven rounds of ammunition from the Impala. Mr. Blakeney was eventually arrested at his mother-in-law's house about four months later, on July 12, 2019.

Mr. Blakeney was charged as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He is currently awaiting trial. He previously pled guilty to five felonies, including two for unlawful possession of a firearm. The remaining felonies Mr. Blakeney pled guilty to are possession of controlled substances with an intent to distribute, aggravated harassment by a prisoner, and conspiracy to commit burglary.

Mr. Blakeney stipulated to pretrial detention on November 1, 2019, but now seeks pretrial release. The Court held an evidentiary hearing on January 20, 2021.

## DISCUSSION

The Court makes a *de novo* determination of whether Mr. Blakeney is eligible for bail and, if so, whether he should be subject to any pretrial conditions of release. *See, e.g.*, *United States v. Evans*, No. 15-423, 2015 WL 6750769, at *1 (E.D. Pa. Nov. 4, 2015). Eligibility for bail is governed by the Bail Reform Act. 18 U.S.C. §§ 3142 *et seq*. Courts must release a defendant "on personal recognizance" or subject to reasonable conditions, unless the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* §§ 3142(e), (f). The Government bears the burden of proving that no such conditions exist by a preponderance of the evidence. *See Evans,* 2015 WL 6750769, at *3. In determining whether the defendant is reasonably likely to appear at trial or poses a threat to the safety of the community, courts consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a [f]ederal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). All four factors counsel towards detention of Mr. Blakeney until trial.

First, the nature of the offense charged weighs against release. Mr. Blakeney is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Here, the statute expressly included firearm-related offenses in its list of the type of crimes warranting pretrial detention. *See id.* § 3142(g)(1).

Second, the weight of the evidence is also against Mr. Blakeney. Law enforcement personnel saw a gun in Mr. Blakeney's car, and when they asked him about it, he did not deny that it was his. To the contrary, he said that he had a permit for it. The police then saw Mr. Blakeney flee. Police later discovered the car Mr. Blakeney had been driving, abandoned in the middle of

the street. Consistent with the police officers' testimony, a gun with seven rounds of ammunition was recovered from the abandoned vehicle.

It is true that a DNA test of a sample recovered from the exterior of the firearm was inconclusive, and that a test of the sample recovered from the magazine excluded Mr. Blakeney as the source. Mr. Blakeney argues that this fact, along with the placement of the gun, suggests that the weapon was placed there by someone sitting in the back of the car. But this is unconvincing. The weapon was stolen, and absent any evidence who the DNA on the magazine belonged to, it is equally plausible that the DNA found on the magazine belonged to the gun's former owner, some kind of intermediary, an accomplice, or—as Mr. Blakeney posits—an unknown person who put the gun in the Blakeney car. This last explanation strains credulity, because the officers testified that Mr. Blakeney was the only person in the car when he was pulled over. Moreover, Mr. Blakeney did not express surprise at discovery of the weapon or disclaim ownership. Rather, he asserted or at least acknowledged ownership by stating that he had a permit for the firearm. While that statement was later proven false, it does tend to demonstrate that Mr. Blakeney—and not some unknown third party—placed the gun under the passenger seat of the car. Accordingly, this factor weighs against Mr. Blakeney.[2]

Next, and certainly not to be minimized, Mr. Blakeney's "history and characteristics" support pretrial detention. Mr. Blakeney was on probation at the time he was arrested for the crime at issue. He had completed a prison sentence for unlawfully possessing another gun only months before the police officers pulled him over on March 19, 2019. And when he was pulled over, he apparently lied to the police about having a permit, and then fled. This was not the first time that Mr. Blakeney violated the terms of parole, and this definitely demonstrates that Mr. Blakeney is a

---

[2] While § 3142 requires the Court to consider the weight of evidence against Mr. Blakeney, the Court makes no determination as to a jury's likely verdict at trial.

4

flight risk. Mr. Blakeney's criminal history also demonstrates that he would pose a risk to the community if he were released. In addition to the firearm-related crimes, Mr. Blakeney previously pled guilty to conspiracy to commit burglary and simple assault.

Mr. Blakeney's arguments to the contrary are unpersuasive. He argues that he has substantial ties to the community and employment opportunities. In his initial brief, he also argued that could return home to where his wife lives. Even if this were true, Mr. Blakeney had those same ties and employment opportunities in March 2019, and they did not prevent him from fleeing from police then. If anything, information from Mr. Blakeney's counsel that he and his wife are reconsidering their relationship, and that Mr. Blakeney would live with a friend rather than return home, shows that these ties are, if anything, less substantial than they were in March 2019. Finally, although Mr. Blakeney has managed to appear at some court proceedings, these appearances do not outweigh his repeated violations of parole and his attempt to deceive and then flee from the police.

Finally, Mr. Blakeney points to his medical history as pertinent "history and characteristics" evidence. He argues that he should be released because he is suffering from a variety of medical conditions, including hemorrhoids, an anal fistula, a fracture of his left hand, chest pains, and depression. He further argues that the FDC has failed to take adequate care of his physical and mental health, and that this weighs in favor of his release. But § 3142 does not include a physical or mental health exception for those who are a threat to the community or pose a flight risk. Because Mr. Blakeney does not argue how these conditions render him less of a threat to the community, or make him more likely to appear at trial, this evidence is simply not relevant to the present inquiry.

In any case, the evidence shows that Mr. Blakeney has received adequate healthcare. On June 24, 2020, Mr. Blakeney underwent surgery for his anal fistula at Jefferson Hospital, and has received follow-up care. He has also received medication to help address his hemorrhoids. Although Mr. Blakeney's brief states that he has not seen an orthopedist for his hand, this does not mean that he has not received care. Rather, health professionals at the FDC took x-rays and applied splints. It is true that he was taken to an orthopedist, but the orthopedist apparently turned him away because he had not been tested for COVID-19. But a health care professional's concern for the transmission of the COVID-19 virus does not demonstrate a lack of concern for Mr. Blakeney. Indeed, on October 27, 2020, a radiologist conducted and reviewed an x-ray of his hand, and concluded that the hand was continuing to heal.

The FDC's response to Mr. Blakeney's other two conditions affirms the Government's position that Mr. Blakeney is receiving adequate medical care. When he complained of chest pains on September 8, 2020, a chest radiograph was administered the next day. Mr. Blakeney has also suffered depression for several years. His medical records show that he has been taking medication for his depression, and that the medication has helped. Thus, even accepting Mr. Blakeney's medical history as relevant, it does not justify pretrial release.

Finally, and as alluded to above, releasing Mr. Blakeney would pose an unacceptable risk to the public. Mr. Blakeney is charged with possessing a firearm loaded with seven rounds of ammunition. This is the third time Mr. Blakeney has been charged with unlawfully possessing a firearm. He was sentenced in October 2016 for unlawfully possessing a weapon. Only a month later, he was again found in possession of a gun. He was sentenced for this offense on September 17, 2018. Then, only a few months later, he was again found in possession of a gun, leading to the charges presently pending against him. Also very concerning is Mr. Blakeney's prior

convictions for possession of controlled substances with intent to distribute, and conspiracy to commit burglary, both of which threatened to harm or did harm the community.

The Government has established by a preponderance of the evidence that no condition or combination of conditions of pretrial release would reasonably assure Mr. Blakeney's appearance at trial and the safety of the community at this time.

Accordingly, Mr. Blakeney's motion is denied. An appropriate Order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE